THE ALGERIA. THE ELLEN S. JENNINGS. THE BAILEY. THE MAJESTIC.

(District Court, E. D. Pennsylvania. August 15, 1907.)

No. 53.

COLLISION—STEAMSHIP AND CROSSING TOW—MUTUAL FAULT.

A tug with four barges in tow, the entire tow being 1,250 feet in length, was passing up near the east side of the Delaware river in the daytime on a flood tide, and, it being necessary to cross to leave some of the barges on the west side, the tug signaled the tow her intention to shorten up the hawsers as was customary and proper to lessen the danger of collisions with other vessels in crossing, but she did not then shorten the hawsers, but proceeded out to the middle of the channel, and then stopped for that purpose. Meantime the steamship Algeria was coming slowly down the river, being about a half mile distant, when the tow started to cross. No signals were exchanged, but, seeing the tow turn to cross, the Algeria starboarded her helm, and slowed still more, but did not reverse until the tug stopped, when it was too late, and she came into collision with the second barge from the rear. *Held,* that the tug and the Algeria were

both in fault, the former for not stopping and shortening her tow before crossing in the usual manner, and for stopping when halfway across, and thus obstructing the channel with her long and cumbersome tow in front of the coming steamship; and the latter for not stopping at once when such dangerous maneuver was seen; and that the barges were not in fault for casting off their hawsers when the collision was imminent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 79.]

In Admiralty. Suit for collision.

John F. Lewis and Francis C. Adler, for the Ellen S. Jennings and the Bailey.

Howard H. Yocum and N. Dubois Miller, for the Algeria.

Willard M. Harris, for the Majestic.

J. B. McPHERSON, District Judge. This is an action in rem brought by the owners of two barges, the Ellen S. Jennings and the Bailey, to recover damages for a collision in the Delaware river, whereby both barges suffered injury. The Algeria is a large steamship, belonging to the Anchor Line, and the Majestic is the tug that had the barges in tow; both vessels being charged with fault. The testimony presents the usual conflict, and I have therefore had the usual difficulty in arriving at what seems on the whole to be the truth of the occurrence. In my opinion, the following facts are established by the weight of the evidence, although there is scarcely one fact that is not denied by opposing witnesses. My conclusions have necessarily been reached in large part by weighing the probabilities of the various accounts, and in this I have fortunately had the assistance of some disinterested testimony, upon which I have felt justified in placing a good deal of reliance. The unexplained absence of some witnesses has also received consideration.

With this preface, I state the facts to be as follows:

On Sunday afternoon, June 28, 1903, about half past 3 or 4 o'clock, the tug Majestic was proceeding up the river, towing four barges in three tiers, tandem, the first tier composed of the Frank Bellville and the Thomas J. Naulty lashed together, the Bellville (which was a small vessel) being upon the port side of the Naulty, the second tier consisting of the Jennings, and the third of the Bailey. The Bellville was light, but the other three barges were loaded with railroad ties. The tug was about 100 feet long. The Naulty, the Jennings, and the Bailey were each about 150 feet in length. The hawsers between the tug and the first tier, and between the first and second tiers, were each from 200 to 250 feet long, and the hawser between the Jennings and the Bailey was somewhat longer. The length of the whole tow, therefore, was more than 1,250 feet. The tow was made up under the supervision of the tug, whose master had entire charge of the navigation. The tide was flood, the weather was clear, only a light breeze was blowing, which did not interfere with navigation, and the speed of the tug was from five to six miles an hour. The course of the tow was along the eastern, or New Jersey, side of the river, and this course was maintained until Gloucester ferry was reached, when the series of maneuvers took place that finally resulted in the collision.

Two of the barges, the Naulty and the Bailey, were to be landed at Point House wharf on the western, or Pennsylvania, shore not far be-

low Greenwich Point, and nearly opposite Gloucester ferry. To make the landing, it was necessary for the tug to cross the river; but, as the navigable channel at this point is only between 1,500 and 1,600 feet in width, it is obvious that much caution was needed, especially with a tow so long and unwieldly. No doubt the tug was a burdened vessel, and to that extent had the right of way, but even with this privilege it was still under obligation to exercise due care and not to obstruct the channel unnecessarily, or without proper regard for the rights of other craft. As the tug approached Gloucester, and while she was still to the south of the ferry slip, upon the eastern side, she blew three or four short blasts to notify the barges that the hawsers were about to be shortened, in order that the tow might be handled more readily, and the crossing be accomplished more safely. These blasts were intended only for the barges, and were so understood by the Algeria and by the other vessels that heard them. The custom for tows bound across the river from Gloucester to Point House wharf was to stop below the ferry slip on the eastern side, and to shorten hawsers before beginning the crossing. This was a reasonable and proper practice, and the Majestic should have observed it on this occasion. On the contrary, however, she disregarded her own signals to the barges, failed to stop on the eastern side of the channel, and began to cross without shortening any of the hawsers. When she had gone part of the way over, far enough probably to obstruct at least one-half of the channel, she stopped in midstream, and, in that situation, undertook to do the work of shortening the hawsers, that ought to have been done before she began the passage. While this process was going on, the collision with the Algeria took place, the steamship striking a severe blow upon the starboard side of the Jennings, not far from the stern, and the Bailey (which cast herself loose from the Jennings when the peril was seen to be imminent) drifting further upstream on the port side of the Algeria, and striking the barge Cardenas, which was lying at anchor to the eastward of the Algeria. The Majestic gave no signal of her intention to cross the stream, although the Algeria was in full view, and was seen by the tug about half a mile up the river. If the tug had stopped until the Algeria had passed, the collision could not have taken place, nor if she had kept on slowly, until it became certain that the steamship was not coming down, instead of turning directly across her path.

Turning now to the Algeria, it is to be observed that she had come up the river earlier in the afternoon, and had overtaken and passed the tow on her way. She was then and afterwards in charge of a licensed pilot, and came to anchor off Kaighn's Point about 3 o'clock. For some reason, this anchorage ground was not regarded as safe or suitable, and about half past 3 she began to drop down the river in search of a better place. Her speed was very slow, not more than two miles over the ground, and she was still in charge of the pilot. The master and third officer were on the bridge, and a lookout was on duty at the forecastle head, where the chief officer was also on watch. The Majestic, with her barges, was seen from three-quarters of a mile to a mile away, proceeding north along the eastern side of the channel. Her signals to the barges were heard on the Algeria, but, as already

stated, these were not intended for other vessels, and the Algeria did not suppose they were meant for her. When the Majestic turned to port without signal, and began to string out her tow across the river, the Algeria was half a mile away, and coming down very slowly against the flood tide. Seeing this threatening movement, the Algeria's wheel was put hard a-starboard, and her engines were stopped, or slowed down so as to secure a mere movement through the water. Thus she continued to approach the tow, although under control and at a slow rate of speed, evidently calculating that the tug could draw the tow clear before the courses would intersect. Whether this would have happened or not cannot now be known. Considering that the Jennings was struck very soon after she had turned across the stream, and that the Bailey apparently never turned at all, it may well be doubted whether the Algeria's calculation would have proved to be correct. At all events, it was utterly vitiated by the tug's stopping in midstream and undertaking to shorten hawsers in that dangerous position. When this maneuver was seen by the Algeria, her engines were ordered full speed astern, and her anchor was dropped, but she had already come too close to permit these very proper efforts to succeed, for the collision with the Jennings followed almost at once, and the injury to the Bailey happened very soon afterward.

In this state of facts, I think the tug and the steamship were both at fault. The tug should have stopped and shortened her hawsers before attempting to cross, should have signaled her intention before undertaking the passage, and should not have stopped in midchannel, and thus have increased a danger already apparent. The steamship may have been at fault in not keeping farther off to the westward, although I am not greatly disposed to insist upon this, but I think she was certainly to blame in holding on too long after she saw the unusual obstruction before her. She was going at slow speed against a flood tide, and her movements could have been easily controlled. If she had stopped altogether, even at the loss of 15 minutes, or had stopped and reversed, when she observed the dangerous character of the tug's maneuver, the collision would not have occurred, and I think she must be held liable for taking the chance that the tug would be able to pull the tow across before she herself got down to the barges. Certainly she did not leave herself much margin, for with all her efforts she was not able to clear the second tier of the tow, although she began the attempt when she was half a mile away.

Moreover, it must not be forgotten that the tow had the right of way, and the Algeria was bound to pay proper respect to this privilege, even if she were somewhat inconvenienced thereby. Neither did she give any signal of her movements, and this too may have contributed to the accident, although it is quite sufficient to hold the steamship at fault for failing to stop when stopping would have surely prevented the injury.

Some argument was made in support of the charge that the barges were also negligent in casting off their hawsers and in failing to anchor after they found themselves adrift, but I am not disposed to regard it seriously. Whatever the barges may have done was in the stress of

peril, and should be judged leniently. I see no sufficient ground on which they, or either of them, can be adjudged in fault.

A decree may be entered against the tug and the steamship, with an order of reference to a commissioner.